**NO. 23-1634(L)**

In The

# United States Court Of Appeals
## For The Fourth Circuit

**MOKE AMERICA LLC,**
**a New York limited liability company,**
*Plaintiff – Appellee,*

v.

## MOKE INTERNATIONAL LIMITED,
*Counter Claimant – Appellant,*

and

**AMERICAN CUSTOM GOLF CARS, INC., a California corporation;**
**MOKE USA, LLC, a Delaware limited liability company,**
*Defendants,*

and

**BLACK AND WHITE CORPORATIONS I-X;**
**ABC PARTNERSHIPS I-X; JOHN AND JANE DOES I-X;**
**DANIELS INDUSTRIES, LLC, an Ohio limited liability company;**
**ANTOINE VERGLAS, INC., a New York corporation,**
*Third Party Defendants.*

_____

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA AT RICHMOND**

_____

**BRIEF OF PLAINTIFF-APPELLEE/CROSS-APPELLANT**
**MOKE AMERICA, LLC**

_____

**David S. Brafman**
**J. Andre Cortes**
**Mark D. Passler**
**AKERMAN LLP**
**Suite 1100 West Towe**
**777 South Flagler Drive**
**West Tower**
**West Palm Beach, FL 33401**
**(561) 653-5000**
**david.brafman@akerman.com**
**andre.cortes@akerman.com**
**mark.passler@akerman.com**

*Counsel for Appellee/Cross-Appellant Moke America LLC*

## UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

## DISCLOSURE STATEMENT

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.


No. __23-1634__         Caption: __Moke America LLC v. Moke International Limited, et al.__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__Moke America LLC__
(name of party/amicus)

_____

 who is _____appellee_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)


1.    Is party/amicus a publicly held corporation or other publicly held entity?    ☐YES ☑NO

2.    Does party/amicus have any parent corporations?                 ☐YES ☑NO
      If yes, identify all parent corporations, including all generations of parent corporations:

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?                         ☐YES ☑NO
      If yes, identify all such owners:

4.   Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation?  ☐YES ☑NO
     If yes, identify entity and nature of interest:

5.   Is party a trade association? (amici curiae do not complete this question)  ☐YES ☑NO
     If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.   Does this case arise out of a bankruptcy proceeding?  ☐YES ☑NO
     If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

7.   Is this a criminal case in which there was an organizational victim?  ☐YES ☑NO
     If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

Signature: /s/ David Brafman                          Date:        6/26/23

Counsel for: Moke America LLC

Print to PDF for Filing

# TABLE OF CONTENTS

**Page**

DISCLOSURE STATEMENT

TABLE OF AUTHORITIES.................................................................iv

JURISDICTIONAL STATEMENT ..........................................................1

STATEMENT OF ISSUES .................................................................2

STATEMENT OF THE CASE................................................................4

I.   Statement of Facts.................................................................6

    A.   For Years Prior To Any Of The Parties In This Case, Mini Mania Used The Trademark MOKE In Commerce In The United States In Selling MOKE-branded Automotive Products ..................................6

II.   Procedural History ............................................................11

    A.   The Genesis Of The District Court Action...........................................11

    B.   The MIL Defendants Chose To Waive Any Right To Rely On Alleged Evidence Relating To Foreign Trademark Rights To Avoid Producing That Evidence To Moke America In Discovery ..................................................12

    C.   At Trial, The MIL Parties Argued That MOKE Was A Descriptive Trademark And That Moke America Failed To Prove That Mini Mania Had Established Secondary Meaning ......................................13

    D.   The Court's Initial Basis For Granting The MIL Parties' Rule 52(c) Motion Was Finding That MOKE Is A Descriptive Mark And Moke America Failed To Prove Secondary Meaning In Connection With Mini Mania ........................................14

    E.   The MIL Parties Chose Not To Offer Any Evidence In Support Of Their Counterclaims..................................................14

i

F.     The Court Ultimately Found That MOKE Was Not Descriptive But Generic, Resulting In No Party Being Able To Own MOKE As A Trademark ....................................................................14

SUMMARY OF THE ARGUMENT .....................................................16

ARGUMENT ........................................................................................20

I.     This Court Should Overturn The District Court's Finding That MOKE Is Generic And Instead Find It Inherently Distinctive .................................20

A.     The District Court Erred In Holding That Moke America Bore The Burden Of Disproving That MOKE Is Generic As Part Of Its *Prima Facie* Case .........................................................21

B.     The District Court's Finding Of Genericness Was Clearly Erroneous Because It Is Not Supported By The Evidence .................25

1.     The Spectrum Of Distinctiveness ............................................25

2.     MOKE Is Not Generic Because There Is No Evidence That The Purchasing Public Primarily Understands MOKE To Refer To A Class Of Automotive Products .............27

3.     MOKE Is Not Descriptive Because The Word MOKE Does Not Directly Describe Any Aspect Of Automotive Products.................................................................29

4.     MOKE Is Arbitrary, Fanciful, Or Suggestive -- Categories That Do Not Require Any Evidence Of Secondary Meaning When Proving Ownership..........................................31

II.    The District Court's Finding That Mini Mania Did Not Acquire Rights in MOKE Should Be Reversed.........................................32

A.     Prior To The MIL Parties' Alleged 2015 Priority Date, And At A Time When The MIL Parties Admit That No One Else Owned U.S. Trademark Rights In MOKE, Mini Mania Used The MOKE Trademark In Commerce.................................................32

B.    Mini Mania Did Not "Act Only As A 'Middleman'".........................41

C.    The MIL Parties Would Not Be Entitled To Judgment In Their
Favor Even If Mini Mania Were A Mere "Middleman" ....................48

III.    Remand Is Necessary For Moke America To Be Able To Offer At Trial
Its Evidence That It Is The Successor-in-Interest Of Mini Mania's
Trademark Rights In MOKE ..........................................................................50

IV.    The Motion In Limine Preventing The MIL Parties From Offering
Evidence Regarding Foreign Trademark Rights Was Properly Granted.......51

CONCLUSION .........................................................................................................53

STATEMENT REGARDING ORAL ARGUMENT................................................54

CERTIFICATE OF COMPLIANCE .......................................................................55

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ale House Mgmt., Inc. v. Raleigh Ale House, Inc.*,
   205 F.3d 137 (4th Cir. 2000) ..........................................................21

*Allard Enterprises, Inc. v. Advanced Programming Resources, Inc.*,
   146 F.3d 350 (6th Cir. 1998) ..........................................................37

*Am. Online, Inc. v. AT & T Corp.*,
   243 F.3d 812 (4th Cir. 2001) ..........................................................22

*Application of Quik-Print Copy Shops, Inc.*,
   616 F.2d 523 (C.C.P.A. 1980) ........................................................26

*Au-Tomotive Gold, Inc. v. Volkswagen of Am., Inc.*,
   457 F.3d 1062 (9th Cir. 2006) ........................................................46

*Century 21 Real Estate Crop. v. Lendingtree, Inc.*,
   425 F.3d 211 (3d Cir. 2005) .....................................................46, 49

*Daimler AG v. A-Z Wheels LLC*,
   334 F. Supp. 3d 1087 (S.D. Cal. 2018) .........................................46

*Emergency One, Inc. v. American Fire Eagle Engine Co., Inc.*,
   332 F.3d 264 (4th Cir. 2003) .....................................................32, 40

*Feathercombs, Inc. v. Solo Prod. Corp.*,
   306 F.2d 251 (2d Cir. 1962) ...........................................................27

*Filipino Yellow Pages, Inc. v. Asian J. Publications, Inc.*,
   198 F.3d 1143 (9th Cir. 1999) ........................................................22

*Ford Motor Co. v. O.E. Wheel Distributors, LLC.*,
   868 F. Supp. 2d. 1350 (M.D. Fla 2012) ........................................46

*Fuddruckers, Inc. v. Doc's B.R. Others, Inc.*,
   826 F.2d 837 (9th Cir. 1987) .....................................................31, 40

*George & Co. LLC v. Imagination Entm't Ltd.*,
　　575 F.3d 383 (4th Cir. 2009) .........................................................36

*Golden Eye Media USA v. Trolley Bags UK Ltd.*,
　　525 F. Supp. 3d 1145 (S.D. Cal. 2021) ......................................28

*H. Marvin Ginn Corp. v. Int'l Ass'n of Fire Chiefs, Inc.*,
　　782 F.2d 987 (Fed. Cir. 1986) ......................................................26

*Hana Financial, Inc. v. Hana Bank*,
　　135 S. Ct. 907, 190 L. Ed. 2d 800 (2015).................................32

*Harrods Ltd. v. Sixty Internet Domain Names*,
　　302 F.3d 214 (4th Cir. 2002) .......................................................52

*Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc.*,
　　No. 94 CIV 2663 (RPP), 1995 WL 241875
　　(S.D.N.Y. Apr. 26, 1995), *aff'd in part, vacated in part*
　　*(on other grounds)*, 80 F.3d 749 (2d Cir. 1996)...........................23

*Intel Corp. v. Advanced Micro Devices, Inc.*,
　　756 F. Supp. 1292 (N.D. Cal. 1991)............................................24

*Interprofession du Gruyere v. U. S. Dairy Exp. Council*,
　　61 F.4th 407 (4th Cir. 2023) .......................................................27

*Jewish Sephardic Yellow Pages, Ltd. v. DAG Media, Inc.*,
　　478 F. Supp. 2d 340 (E.D.N.Y. 2007) .........................................22

*Krav Maga Ass'n of Am., Inc. v. Yanilov*,
　　464 F. Supp. 2d 981 (C.D. Cal. 2006)..........................................22

*Loglan Inst., Inc. v. Logical Language Grp., Inc.*,
　　962 F.2d 1038 (Fed. Cir. 1992) ...................................................27

*Major League Baseball Properties, Inc. v. Sed Non Olet Denarius, Ltd.*,
　　817 F. Supp. 1103 (S.D.N.Y. 1993), *vacated pursuant to settlement*,
　　859 F. Supp. 80 (S.D.N.Y. 1994) .................................................36

*Menendez v. Holt*,
　　128 U.S. 514, 9 S. Ct. 143 (1888) ..............................................43

*MicroStrategy Inc. v. Motorola, Inc.*,
    245 F.3d 335 (4th Cir. 2001) ...................................................................44, 45

*Murphy Door Bed Co. v. Interior Sleep Sys., Inc.*,
    874 F.2d 95 (2d Cir. 1989) .......................................................................24, 25

*New Kids on the Block v. News Am. Pub., Inc.*,
    971 F.2d 302 (9th Cir. 1992) .........................................................................46

*One Industries, LLC v. Jim O'Neal Distributing, Inc.*,
    578 F.3d 1154 (9th Cir. 2009), *cert. denied*,
    130 S. Ct. 1739 (2010)....................................................................................32

*Product Source v. Nahshin*,
    112 F. Supp. 3d 383 (E.D. Va. 2015) .................................................44, 48, 49

*Reese Publishing Co. v. Hampton International Communications, Inc.*,
    620 F.2d 7 (2d Cir. 1980) ...............................................................................23

*Southeastern Brewing Co v. Blackwell*,
    80 F.2d 607 (4th Cir. 1935) ...........................................................................43

*Sterling Drug, Inc. v. Bayer AG*,
    14 F.3d 733 (2d Cir. 1994) .............................................................................52

*Swatch AG v. Beehive Wholesale, LLC*,
    739 F.3d 150 (4th Cir. 2014) .........................................................................11

*T. Marzetti Co. v. Roskam Baking Co.*,
    680 F.3d 629 (6th Cir. 2012) .........................................................................22

*Topps Co., Inc. v. Cadbury Stani S.A.I.C.*,
    526 F.3d 63 (2d Cir. 2008) .............................................................................52

*Two Pesos, Inc. v. Taco Cabana, Inc.*,
    505 U.S. 763 (1992)........................................................................................25

*United States Pat. & Trademark Off. v. Booking.com B. V.*,
    140 S. Ct. 2298 (2020)..............................................................................26, 27

*In re Valenite Inc.*,
    84 U.S.P.Q.2d 1346, 2007 WL 2253482 (T.T.A.B. 2007) ...........................34

*Victor Tool & Machine Corp. v. Sun Control Awnings, Inc.*,
    299 F. Supp. 868 (E.D. Mich. 1968), aff'd,
    411 F.2d 792 (6th Cir. 1969) ....................................................................43

*Yellow Cab Co. of Sacramento v. Yellow Cab of Elk Grove, Inc.*,
    419 F.3d 925 (9th Cir. 2005) ....................................................................22

## Statutes

15 U.S.C. § 1071(b) ....................................................................................11

15 U.S.C. § 1071(b)(4)..................................................................................1

15 U.S.C. § 1125(a) ...............................................................................11, 37

15 U.S.C. § 1126(e) ....................................................................................38

28 U.S.C. § 1291 ..........................................................................................2

28 U.S.C. § 1331 ..........................................................................................1

28 U.S.C. § 1338(a) ......................................................................................1

28 U.S.C. § 1367(a) ......................................................................................1

Lanham Act § 43(a) ....................................................................................37

Lanham Act § 44(e) ....................................................................................38

## Rules

Fe.d R. Civ. P. 52(c)...........................................................................5, 13, 15

Fed. R. App. P. 4(a)(4)..................................................................................2

Fed. R. Civ. P. 59(e) ..................................................................................15

## Other Authorities

2 McCarthy on Trademarks and Unfair Competition (5th ed.) ....................*passim*

# JURISDICTIONAL STATEMENT

On August 24, 2015, Defendant American Custom Golf Cars, Inc., ("ACG") filed an application at the United States Patent and Trademark Office ("USPTO") to register the trademark MOKE with a design in connection with vehicles.  Plaintiff-Appellee/Cross-Appellant Moke America, LLC ("Moke America") timely filed a Notice of Opposition with the USPTO's Trademark Trial and Appeal Board ("TTAB"), opposing the registration of ACG's trademark.  Upon the TTAB's dismissal of the opposition proceeding, Moke America timely commenced the underlying civil action in the District Court, seeking reversal of the TTAB's dismissal of the opposition proceeding and bringing additional claims, including for federal trademark infringement and a declaratory judgment of ownership of the trademark MOKE.  The District Court's jurisdiction was predicated on 15 U.S.C. § 1071(b)(4), 28 U.S.C. § 1331, 28 U.S.C.§ 1338(a), and 28 U.S.C. § 1367(a).

Defendants-Appellants/Cross-Appellees filed counterclaims, of which only counterclaims for affirming the TTAB's decision, federal trademark infringement, and declaratory judgment survived for trial.

In response to Rule 52(c) motions by both sides, the District Court issued a Memorandum Opinion and final judgment that: (1) found the MOKE trademark to be generic in connection with vehicles, rejecting the parties' competing claims of ownership of the trademark and trademark infringement claims, and reversing the

TTAB's dismissal of Moke America's opposition proceedings, and (2) ordered the USPTO to deny ACG's pending application for registration of the MOKE mark.

This Court's appellate jurisdiction is predicated on 28 U.S.C. § 1291 due to a final decision and judgment in the District Court that decided all claims against all parties and declared the rights of each party. The District Court entered judgment on May 3, 2023, and denied Moke America's Motion to Alter or Amend Judgment on June 7, 2023. Moke America filed its Notice of Appeal in the District Court on June 21, 2023. Accordingly, Moke America's cross-appeal is timely under Rule 4(a)(4) of the Federal Rules of Appellate Procedure.

### STATEMENT OF ISSUES

1.     Did the District Court err in holding that Appellee/Cross-Appellant Moke America bore the burden of disproving that MOKE was generic to prevail on its trademark claims when no party ever asserted that MOKE was generic?

2.     Did the District Court err in holding that Moke America bore the burden of disproving that MOKE was generic to prevail on its trademark claims when the District Court's genericness finding was based upon MOKE becoming generic over time (*i.e.*, genericide), as opposed to being generic from the start?

3.     Did the District Court err in finding that MOKE has become a generic trademark for a style of car when no party ever contended that MOKE was generic, dictionaries do not define MOKE as a style of car or otherwise as relating to

automotive products, and there is no consumer survey evidence, customer testimony, evidence from newspapers or other publications, or other evidence supporting that the relevant public primarily understands MOKE to be a generic term referring to a style of car?

4.  Did the District Court err in finding that Moke America's predecessor-in-interest Mini Mania did not use MOKE as a trademark, but instead only as a generic term synonymous with a style of vehicle produced by different companies in a prior era, when: (1) those prior companies were related entities located outside the United States and out of the business years before Mini Mania began selling MOKE-branded vehicle bodies and kits in the United States in 2008; (2) Mini Mania advertised and sold MOKE-branded automotive products and kits, including entire vehicle bodies, mudflaps, and vehicle mats that all featured a prominent MOKE logo, as of 2008; (3) Mini Mania continuously marketed and offered its MOKE logo-bearing vehicle kits and other MOKE-branded automotive products for sale on its website miniMOKEusa.com with a large MOKE trademark displayed at the top of each webpage, as of 2008; and (4) Defendant-Appellants/Cross-Appellees admit that no one else owned the U.S. trademark rights in MOKE in 2008 and there is no evidence of anyone other than Mini Mania using the MOKE trademark in commerce in the United States prior to Defendant-Appellants/Cross-Appellees' alleged first use in 2015?

## STATEMENT OF THE CASE

The Defendant-Appellants/Cross-Appellees' Statement of the Case is incomplete and inaccurate.

Plaintiff-Appellee/Cross-Appellant Moke America, LLC ("Moke America") and Defendant-Appellant/Cross-Appellee Moke International Limited ("MIL") both claim ownership of the trademark MOKE in connection with automotive products in the United States, and both claim the other side is infringing that mark.

Where, as here, two parties use the same trademark for the same goods, as long as the trademark is neither generic nor descriptive, the party with the earlier priority date has superior trademark rights.  Moke America's priority date derives from its predecessor-interest Mini Mania, Inc. ("Mini Mania"), which marketed and offered for sale MOKE-branded vehicle kits and components in the United States, including vehicle bodies, vehicle mats, and mud flaps that were all branded with the MOKE trademark, since at least 2008.  MIL's priority date derives from its alleged predecessors-in-interest Defendant American Custom Golf Cars, Inc. ("ACG") and co-Appellant/Cross-Appellee Moke USA, LLC (together with MIL, the "MIL Parties"). The earliest priority date that the MIL Parties can claim is in 2015, derived from ACG.

The first phase of the bench trial in this case was on Moke America's claims, but limited to the issue of whether Mini Mania had rights in the trademark MOKE

before 2015 (that is, before the MIL Parties' alleged priority date). (JA0498) The MIL Parties then orally moved for judgment under Rule 52(c), arguing that Mini Mania did not own the MOKE trademark because MOKE was descriptive and Moke America failed to prove that consumers associated MOKE with Mini Mania (that is, failed to prove "secondary meaning"). The District Court (initially) agreed, finding that MOKE was descriptive on the spectrum of trademark distinctiveness, and that Moke America had not proved that MOKE had acquired secondary meaning in connection with Mini Mania. (JA0849) The District Court then set further dates for trial on the MIL Parties' counterclaims and warned the MIL Parties that whether they prevailed would likely turn on whether they proved secondary meaning. (JA0850, JA0858)

The MIL Parties chose to rest their counterclaim case without seeking to admit any testimony, exhibits, or other evidence – none at all. Consequently, Moke America moved for judgment under Rule 52(c) on the MIL Parties' counterclaims because the MIL Parties failed to prove secondary meaning despite their successful argument to the District Court on their own Rule 52(c) motion that MOKE is a descriptive mark.

In its subsequent written opinion, revisiting the MIL Parties' Rule 52(c) motion and ruling on Moke America's, the District Court withdrew its initial finding that MOKE is a descriptive mark. (JA1103, JA1146) Instead, even though no party

had argued or presented evidence that MOKE was a generic term, the District Court held that MOKE is generic, and thus: (1) Mini Mania's use of MOKE was use of a generic term rather than trademark use; and (2) none of the parties could own rights in MOKE. (JA1127, JA1131, JA1146-1148)

Moke America agrees with the MIL Parties that MOKE is not generic, but disagrees with the MIL Parties as to the resulting repercussions. Moke America further cross-appeals the Court's related finding that Mini Mania's use MOKE was not use of a trademark and, therefore, did not give Mini Mania ownership of federal common law trademark rights in MOKE.

## I.    Statement of Facts

### A.    For Years Prior To Any Of The Parties In This Case, Mini Mania Used The Trademark MOKE In Commerce In The United States In Selling MOKE-branded Automotive Products

Mini Mania is an automotive products company based in California that has been selling automotive products to customers around the country since the 1970s. (JA0513, JA1123) Mini Mania was founded by Mr. Don Racine, who owned and ran the business from its inception until recently selling it in 2019. (JA0514, JA1123)

In 2008, Mr. Racine realized that there was an automotive brand, MOKE, that had originally been used by a series of apparently related foreign companies but that had been abandoned since the early 1990s. (JA0531, JA0548-0549, JA1123 ¶ 3) He

decided to resurrect the MOKE brand and launch the miniMOKEusa.com website to sell MOKE-branded automotive products and make Mini Mania "the MOKE people in the U.S." (JA0570-0571, JA0540, JA1127 ¶ 17)

From 2008 until after the MIL Parties' alleged 2015 priority date, Mini Mania used its miniMOKEusa.com website to market and offer to sell MOKE-branded vehicle kits under a large MOKE trademark logo that appeared on the top of every webpage. (JA0540-0542, JA0554, JA0556-0557, JA0532-0533, JA0704, JA0625-0626, JA0627-0628) Mini Mania's vehicle kit included the entire vehicle body that displayed a large MOKE logo on its front, mud flaps that also displayed a MOKE logo, MOKE-branded floor mats, front and rear seats, the windshield frame and glass, front and rear bumpers, a roll bar, side mirrors, and roof canvas:



(JA0704, JA0539, JA0541-0542, JA0532-0533, JA0618)

The following image is an archived capture from Mini Mania's minimokeusa.com website in 2008 showing an example of Mini Mania marketing

and offering for sale under a large MOKE logo its MOKE vehicle kit with a vehicle

body bearing a MOKE logo on its front:









(JA0627-0628)

On the same website, Mini Mania also marketed and sold individual automotive parts under the same large MOKE logo at the top, including MOKE-branded mud flaps, MOKE-branded floor mats, and MOKE-branded vehicle name badges:



(JA0611, JA0618, JA0623, JA0631-0632, JA0556)

In marketing its MOKE vehicle kits to the public, Mini Mania advertised that they were "from Mini Mania," and that Mini Mania was the official source of MOKE vehicle kits in the United States. (JA0624, JA0627-0628, JA0544, JA0550, JA0552, JA0553)

As the MIL Parties acknowledge, no one else owned the MOKE trademark in the United States when Mini Mania began selling its MOKE-branded vehicle kits in 2008 because even the foreign companies associated with the brand had abandoned it in 1993. *See* MIL Parties Opening Br. (Doc. 33) at 6, 36, 38-39; (JA0548).

Mini Mania offered its MOKE-branded vehicle kits and individual MOKE-branded automotive products for sale under the MOKE trademark continuously from at least 2008, which is seven years before the MIL Parties' claimed 2015 priority date, until after 2015. (JA0529, JA0542, JA0544, JA0545, JA0548-0549, JA0552, JA0557). There is no evidence of anyone other than Mini Mania selling any automotive products under the MOKE trademark in the United States until the parties in this lawsuit entered the market about seven years later; Mini Mania was in fact the sole source in the United States. (JA0555-0556).

Mr. Racine used his experience and knowledge to choose products that Mini Mania would carry from its suppliers. (JA0524-0525) Mini Mania backed its MOKE-branded products, including the MOKE vehicle kit, with its own warranty. (JA0525) Mini Mania took responsibility for any returns, and it was Mini Mania who the customer looked to if there were any problems with the MOKE-branded product. (JA0524) Mini Mania never told any customer that responsibility for any issues with Mini Mania's MOKE-branded products lies with Mini Mania's supplier. (JA0560-0561)

10

## II.    Procedural History

### A.    The Genesis Of The District Court Action

In 2015, Defendant ACG filed an application to registered the trademark MOKE with a design element.  (JA0029, JA1109)  Moke America filed a Notice of Opposition to that application before the USPTO Trademark Trial and Appeal Board (the "TTAB").  (JA1109)

In 2020, the TTAB dismissed the opposition. (JA1109) Moke America commenced the underlying lawsuit in the U.S. District Court for the District of Eastern Virginia pursuant to 15 U.S.C. § 1071(b), thereby challenging the TTAB's decision in a proceeding that permits additional discovery, the admission of new evidence at trial, and *de novo* consideration of all the issues by the District Court. (JA1110, JA1121) *See also Swatch AG v. Beehive Wholesale, LLC*, 739 F.3d 150 (4th Cir. 2014) ("In a § 1071(b) action, the district court reviews the record de novo and acts as the finder of fact. The district court has authority independent of the PTO to grant or cancel registrations and to decide any related matters such as infringement and unfair competition claims.") Moke America also brought additional claims, including for a declaratory judgment of ownership of the MOKE trademark and a claim for infringement of the MOKE federal common law trademark under 15 U.S.C. § 1125(a). (JA0023-0047) The MIL Parties brought counterclaims seeking affirmance of the TTAB decision, a declaratory judgment

of noninfringement, and a claim for trademark infringement against Moke America.

**B.    The MIL Defendants Chose To Waive Any Right To Rely On Alleged Evidence Relating To Foreign Trademark Rights To Avoid Producing That Evidence To Moke America In Discovery**

The MIL Parties alleged that they owned certain foreign trademark registrations in their Counterclaims. (JA0191) After the MIL Parties objected to producing their related documents during discovery, Moke America moved to compel. (JA0243) At the October 12, 2021 hearing on this discovery dispute, Magistrate Judge Hanes directed the MIL Parties "to elect whether they would rely on evidence relating to any non-US trademark in litigating the remainder of the case." (JA0243-0244) The MIL Parties "elected to not rely on such non-US trademark evidence." (JA0244) "Based on that representation," Moke America agreed not to seek discovery of that alleged evidence. (JA0244)

Despite this election to not rely on non-US trademark evidence, the MIL Parties indicated their intention to introduce evidence of their alleged foreign trademark portfolio before the jury anyway. (JA0403) Moke America filed a motion in limine to preclude the MIL Parties from doing so. (JA0402-0403) In light of the MIL Parties' prior election not to rely on evidence of foreign trademark rights "in litigating the remainder of the case," the District Court correctly granted the motion.

**C.    At Trial, The MIL Parties Argued That MOKE Was A Descriptive Trademark And That Moke America Failed To Prove That Mini Mania Had Established Secondary Meaning**

At the conclusion of the first phase of the trial before the District Court, the MIL Parties moved for judgment under Rule 52(c), arguing that MOKE is a descriptive trademark, and that Moke America failed to prove that consumers had come to associate Mini Mania with that trademark:

> MR. MUNOZ [Counsel for the MIL Parties]: … Mr. Racine, Mini Mania did not come up with the word "Moke" and put it out there for the first time.  Its customers already know the word "Moke." They already know it.
>
> THE COURT: **_It's a _descriptive_ word of a type of vehicle._**
>
> MR. MUNOZ: **_Correct_**.

(JA0592, JA0411 ("MR MUNOZ: So the question before us is, did the use of this mark, or this word 'Moke,' was that something that the public identified with Mini Mania's goodwill, or did Mini Mania have its own goodwill and it sold disparate products."), JA0593-0594 (MIL Parties arguing that there was a lack of evidence of secondary meaning in MOKE associated with Mini Mania), JA1118 ("the Court agreed with Plaintiff's contention that Defendants' arguments at trial proved tantamount to taking the position that the MOKE mark is descriptive."), JA1141 ("Then, at trial, Defendants combatted Plaintiffs assertion of common law trademark rights by arguing, albeit implicitly, that the mark belongs to the descriptive category."))

**D. The Court's Initial Basis For Granting The MIL Parties' Rule 52(c) Motion Was Finding That MOKE Is A Descriptive Mark And Moke America Failed To Prove Secondary Meaning In Connection With Mini Mania**

From the bench, the District Court granted the MIL Parties' Rule 52(c) motion with respect to Moke America's claims without immediately explaining the basis for it. (JA0599) However, soon afterwards, the District Court explained that the basis for the ruling was the District Court's finding that, as Defendants argued, MOKE was a descriptive trademark, and there was no secondary meaning in the mark associated with Mini Mania. (JA0856-0857, JA0849, JA1118, JA1141)

**E. The MIL Parties Chose Not To Offer Any Evidence In Support Of Their Counterclaims**

On February 28, 2023, the Court scheduled the continuation of trial to try the MIL Parties' Counterclaims. (JA0850) The Court warned the MIL Parties that they would need to establish secondary meaning in MOKE to prove ownership of that trademark and to prevail on infringement. (JA0858)

However, the MIL Parties chose to rest their counterclaim case without offering any testimony or other evidence whatsoever. (JA1142)

**F. The Court Ultimately Found That MOKE Was Not Descriptive But Generic, Resulting In No Party Being Able To Own MOKE As A Trademark**

Because the MIL Parties chose not to offer any evidence of secondary meaning in support of its counterclaims, Moke America moved for judgment under

Rule 52(c). (JA1036) In the resulting opinion and order, the District Court addressed both parties' Rule 52(c) motions. (JA1103) The Court withdrew its prior finding that MOKE was descriptive, and held instead that it was a generic term for a style of vehicle, and therefore not entitled to trademark protection by anyone. (JA1131, JA1146-1148) Relatedly, the District Court found that Mini Mania's use of MOKE was use of a generic term and not trademark use. (JA1127) Thus, the District Court: (1) reversed the TTAB's dismissal of Moke America's opposition to ACG's registration; (2) held that neither side could own MOKE as a trademark, and, consequently, (3) held that neither side could prevail on their declaratory judgment claims or claims of trademark infringement. (JA1127, JA1146-1149, JA1150-1151)

Moke America subsequently moved to alter or amend the judgement under Rule 59(e), arguing that the District Court assigned the burden of proof to Moke America to disprove genericness on its own claims even though: (1) no party had asserted MOKE was generic, and (2) the District Court's finding of genericness was of the "genericide" type (becoming generic over time, like ESCALATOR) rather than being a mark that consisted of generic words from the beginning (like GYM for a fitness facility). (JA1157-1158) The District Court denied the motion. (JA1158)

## SUMMARY OF THE ARGUMENT

1.    The District Court granted judgment against Moke America on its claims for (a) trademark infringement and (b) a declaration of trademark ownership after the first phase of a trifurcated trial, limited to the issue of whether Moke America's predecessor-in-interest Mini Mania acquired common law trademark rights in MOKE.  The express reason that the District Court granted judgment against Moke America is because the District Court found that MOKE is a generic term for a style of vehicle, and thus was not a protectable trademark that could be owned.

However, this genericness finding was not the result of finding that a preponderance of the evidence supported MOKE being generic.  Instead, the District Court assigned the burden of proof to Moke America to prove by a preponderance of the evidence that MOKE was *not* a generic term as part of Moke America's obligation to prove ownership of a valid common law trademark.  This was a material legal error.

First, even for a common law trademark, a party asserting infringement (or otherwise seeking to prove ownership of the mark) does not bear the burden of disproving genericness unless the opposing party has asserted genericness as a defense.  Here, no party has ever contended that MOKE is generic.  Thus, contrary to the District Court's holding and analysis, Moke America was not obligated to prove non-genericness as part of its prima facie case on its infringement and

16

trademark ownership claims.  Therefore, the District Court should not have granted the MIL Parties' Rule 52(c) motion against Moke America after the first phase of trial.

Second, even when a defendant raises the defense of genericness, caselaw suggests that the plaintiff still does not bear the burden of disproving genericness if the type of genericness at issue is genericide, meaning that the trademark did not start off as generic, but became generic through public use over time.  Here, there was no finding that "moke" is an inherently generic word.  To the contrary, the District Court acknowledged that the word "moke" has no meaning in the United States.  Rather, the District Court's finding is that moke became generic over time.  Consequently, even had the defendants raised the defense of genericness, it still would have been legal error to require Moke America to disprove genericness as part of its prima facie case.

2.     This District Court's finding that MOKE is generic was also clearly erroneous because it is not supported by the evidence.  To be generic, members of the relevant public must primarily use or understand the term to refer to the class of goods in question.  Evidence of the public's understanding and use typically comes from direct consumer testimony, consumer surveys, dictionary listings, or use of the term in newspapers or other publications.  Here, the record is bare of such evidence supporting genericness.  The evidence that does exist, including that "moke" has no

17

dictionary definition in the United States, and even abroad is only slang for a horse or donkey, only supports a finding that MOKE is arbitrary, or fanciful, or at worst, suggestive. All three of those categories are" inherently distinctive", resulting in a protectible trademark even without any evidence of secondary meaning (consumer association between the mark and a single source of the goods).

3.     It is easy to acquire ownership of an inherently distinctive common law trademark. A party merely needs to be the first one to use it in commerce, giving it priority as the senior user over later junior users.

The MIL Parties claim that their priority date in connection with their alleged use of Moke is in 2015. But seven years earlier, at a time when the MIL Parties acknowledge that no one else owned the MOKE trademark in the United States, Moke America's predecessor-in-interest Mini Mania began selling MOKE vehicle kits. Mini Mania's vehicle kit included the vehicle body, which had a highly visible MOKE logo on its front, as well as MOKE-branded mud flaps and vehicle mats, among other parts. Mini Mania marketed and offered its MOKE-bearing vehicle kits for sale on its website minimokeusa.com, launched in 2008. Mini Mania also marketed and sold individual automotive parts bearing a MOKE logo on that website. Mini Mania stood behind its MOKE-branded products, offering a Mini Mania warranty on them, and holding itself out to the public as the official source for these products in the United States. There is no evidence of any other party

18

selling MOKE-branded automotive products in the United States before or after Mini Mania, at least until the MIL Parties' alleged 2015 priority date. These and other related facts established at trial compel a finding that Mini Mania used the inherently distinctive MOKE trademark in commerce starting in 2008, giving it ownership of that trademark at common law and priority over the MIL Parties.

4.      At a hearing on a motion to compel filed by Moke America, the Magistrate Judge required the MIL Parties to "elect whether they would rely on evidence relating to any non-U.S. trademark in litigating the remainder of the case." The MIL Parties elected not to rely on such evidence in litigating the remainder of the case. Consequently, Moke America withdrew its motion to compel seeking related discovery. The District Court subsequently granted Moke America's motion in limine to prevent the MIL Parties from backtracking at trial and sandbagging Moke America with its unproduced alleged evidence relating non-US trademarks. Because the motion in limine was correctly granted in light of the MIL Parties' own election to avoid the obligation of providing discovery of its evidence relating to non-U.S. trademarks, the MIL Parties' appeal of that ruling should be denied.

Thus, and for the reasons detailed further below, Moke America respectfully requests that this Court: (1) reverse the District Court's judgment against Moke America on its claims for a declaratory judgment of trademark ownership (Count II) and for federal common law trademark infringement (combined Counts III, IV, and

19

V); (2) find that MOKE is not generic but is inherently distinctive; (3) find that Mini Mania became the owner of the common law MOKE trademark in 2008 by using the MOKE trademark in commerce; (4) reject Defendant-Appellants/Cross-Appellee's request to rule in their favor on their counterclaims and on Moke America's Count I; and (5) remand this case to the District Court to continue the trial on Moke America's claims.

## ARGUMENT

### I.     This Court Should Overturn The District Court's Finding That MOKE Is Generic And Instead Find It Inherently Distinctive

The District Court's finding that MOKE is generic was the central finding that resulted in dismissal of Moke America's trademark ownership and infringement claims.  (JA1127, JA1146-1148) That genericness finding should be overturned for two reasons.

First, it was legal error to place the burden of proof on Moke America to disprove genericness as part of its *prima facie* case because none of the defendants here (*i.e.*, the MIL Parties) ever contended that MOKE is generic – and, separately, because the genericness issue was one of becoming generic over time.

Second, the District Court's finding was clearly erroneous because there is insufficient evidence in the record to support a finding that consumers primarily understand MOKE to be the generic term for a certain style of vehicle.  Instead, the evidence only supports a finding that MOKE is inherently distinctive.

**A.    The District Court Erred In Holding That Moke America Bore The Burden Of Disproving That MOKE Is Generic As Part Of Its *Prima Facie* Case**

In the District Court's final ruling on the parties' Rule 52(c) motions and granting of judgment against Moke America on its claims, the District Court expressly found that resolution of the case "turns on the burden of proof." (JA1143) For Moke America's causes of action for infringement and for a declaration of trademark ownership, the District Court assigned Moke America ***the burden of proving MOKE was not generic*** by a preponderance of the evidence as part of proving ownership of a valid trademark. (JA1138, JA1143) This was legal error for two reasons.

First, even where the trademark being asserted is unregistered (*i.e.*, a common law trademark), a trademark plaintiff's burden to prove ownership of a valid trademark does ***not*** include the burden of disproving the mark is generic ***unless the defendant has asserted that the mark is generic as a defense***.[1] *See, e.g.*, *Ale House Mgmt., Inc. v. Raleigh Ale House, Inc.*, 205 F.3d 137 (4th Cir. 2000) ("In this case, ***because Raleigh Ale House suggests that the term "ale house" is generic*** and AHM has not registered it, AHM bears the burden of establishing that it is not generic.")

---

[1] Moke America acknowledges that most of the citations in this subsection are nearly identical to those of the MIL Parties in their brief. These cases were originally cited and set forth in this manner by Moke America in its Rule 59 Motion, and Moke America wanted to ensure that it was clear to the Court that this is its position, as well.

(emphasis added); *Am. Online, Inc. v. AT & T Corp.*, 243 F.3d 812, 815 (4th Cir. 2001) (defendant had challenged the asserted marks as "common, generic terms"); *T. Marzetti Co. v. Roskam Baking Co.*, 680 F.3d 629, 633 (6th Cir. 2012) ("Because the mark in this case was not federally registered ***and because Roskam raised "genericness" as a defense***, it was Marzetti's burden to prove that the mark at issue was, in fact, not generic.") (emphasis added); *Yellow Cab Co. of Sacramento v. Yellow Cab of Elk Grove, Inc.*, 419 F.3d 925, 927 (9th Cir. 2005) ("However, if the disputed term has not been federally registered, ***and the defendant asserts genericness as a defense***, the burden shifts to the plaintiff to show that the mark is nongeneric.") (emphasis added); *Filipino Yellow Pages, Inc. v. Asian J. Publications, Inc.*, 198 F.3d 1143, 1146 (9th Cir. 1999) ("If a supposedly valid mark is not federally registered, however, the plaintiff has the burden of proving nongenericness ***once the defendant asserts genericness as a defense***.") (emphasis added); *Jewish Sephardic Yellow Pages, Ltd. v. DAG Media, Inc.*, 478 F. Supp. 2d 340, 353 (E.D.N.Y. 2007) ("***[O]nce the defense of genericness is raised***, it is plaintiff's burden to establish that the unregistered mark is not generic, rather than defendant's burden to prove that it is.") (emphasis added); *Krav Maga Ass'n of Am., Inc. v. Yanilov*, 464 F. Supp. 2d 981, 985 (C.D. Cal. 2006) ("If the disputed term has not been federally registered, however, ***and the defendant asserts genericness as a defense***, the burden shifts to the plaintiff to show that the mark is nongeneric.")

22

(emphasis added); *Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc.*, No. 94 CIV. 2663 (RPP), 1995 WL 241875 (S.D.N.Y. Apr. 26, 1995), *aff'd in part, vacated in part (on other grounds)*, 80 F.3d 749 (2d Cir. 1996) ("For unregistered marks, the burden of proving non-genericness is on the proponent of trademark rights ***where the opponent contends*** that the term was in common usage as a generic term before its alleged use as a trademark.") (emphasis added).

Even the Second Circuit case cited by the District Court holding the burden to disprove genericness was on the plaintiff, *Reese Publishing Co. v. Hampton International Communications, Inc.*, 620 F.2d 7 (2d Cir. 1980), may be understood as consistent with the vast weight of authority cited above. The fact that the appellant there contended that the burden should have been on the defendant (*id.* at 11) suggests that the defendant had raised genericness as a defense. The opinion, however, does not explicitly address whether or not that is the case.

Here, no party has ever contended that MOKE is a generic mark, and even the District Court did not raise the issue until after Plaintiff's portion of the trial was over. (JA0590, JA0597, JA0598, JA0918, JA0924, JA1003) Thus, the District Court should not have put the burden of proving that MOKE is ***not*** generic on Moke America. Because, as the District Court expressly acknowledged, the District Court's finding that MOKE is generic "turn[ed] on" that (incorrect) assignment of the burden of proof, the District Court's finding that MOKE is generic should be reversed.

Second, the case law also distinguishes who bears the burden of proof for genericness between, on the one hand, trademarks that are alleged to be generic from the start of their use (*e.g.*, KNIFE SHOP), and on the other hand, trademarks that started as distinctive trademarks but became generic over time by the public's adoption of the mark as a generic term (also called genericide, such as what occurred with the former trademark ESCALATOR). In *Murphy Door Bed Co. v. Interior Sleep Sys., Inc*., 874 F.2d 95, 101 (2d Cir. 1989), the Court found "this distinction important and [held] that where the public is said to have expropriated a term established by a product developer, the burden is on the defendant to prove genericness. Thus, critical to a trial court's allocation of proof burdens is a determination of whether the term at issue is claimed to be generic by reason of common usage or by reason of expropriation." Even where a defendant raises the defense of genericness, the burden of proof is still not assigned to the plaintiff if the alleged genericness is based on the mark having become generic over time (genericide). The burden of proof regarding genericide always remains on the defendant. *Id.*; *see also Intel Corp. v. Advanced Micro Devices, Inc.,* 756 F. Supp. 1292, 1295-96 (N.D. Cal. 1991) (recognizing the presumption of non-genericness of a product name where the name was not in common usage prior to its adoption by the holder set forth in *Murphy Door*, but not applying the presumption because the mark-at-issue was not "expropriated" by the public in the sense illustrated in *Murphy Door*).

The present case is not one where the trademark at issue consists of words that have always been generic, such as KNIFE SHOP or BAR AND GRILL. This Court should follow *Murphy Door* and find that it is never part of a plaintiff's *prima facie* case to disprove genericide, even if the defendants had raised the defense of genericness. Here, where the District Court found that MOKE had become generic over time (rather than being inherently generic from its first ever use), the District Court's placement of the burden of proof on Moke America to disprove genericness in connection with its claims was also legal error for this second reason.

### B.    The District Court's Finding Of Genericness Was Clearly Erroneous Because It Is Not Supported By The Evidence

#### 1.    The Spectrum Of Distinctiveness

Trademarks can be classified along a continuum of "distinctiveness." In order of decreasing distinctiveness, the categories are: arbitrary or fanciful, suggestive, descriptive, and generic. *See Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768 (1992); 2 McCarthy on Trademarks and Unfair Competition § 11:1 (5th ed.)

Arbitrary and fanciful marks do not convey any information about the goods or services. 2 McCarthy §§ 11:4, 11:11. Arbitrary marks are real words that have nothing to do with the product with which they are used, such as APPLE for computers and BICYCLE for playing cards. *Id.* Fanciful words are simply made up, such as EXXON for gasoline and KODAK for cameras. *Id.* § 11:8.

Suggestive trademarks suggest, but do not ***directly*** and ***immediately*** describe, information about some aspect of the goods or services. Suggestive trademarks convey that information in an indirect or vague manner, requiring imagination or thought. 2 McCarthy §§ 11:19, 11:62. Examples include ACOUSTIC RESEARCH for loudspeakers and CHICKEN OF THE SEA for tuna fish. *Id.* § 11:72.

Descriptive trademarks "must ***directly*** convey some information about the product or service." 2 McCarthy §§ 11:16, 11:19 (emphasis added). "A mark is merely descriptive if it ***immediately*** conveys to one seeing or hearing it knowledge of the ingredients, qualities, or characteristics of the goods or services with which it is used." *Application of Quik-Print Copy Shops, Inc*., 616 F.2d 523, 525 (C.C.P.A. 1980) (emphasis added). Examples of descriptive trademarks are QUICK-PRINT for printing and photocopying services, AFTER TAN for suntan lotion, ASSOCIATION OF TRIAL LAWYERS OF AMERICA for a lawyer's association, and BEEF & BREW for a restaurant. *See* 2 McCarthy §§ 11:19 n.3, 11:24.

Finally, a trademark is generic if it is "the name of a class of products or services," such as ELEVATOR. *See United States Pat. & Trademark Off. v. Booking.com B. V.*, 140 S. Ct. 2298, 2301 (2020). "***The critical issue in genericness cases is whether members of the relevant public <u>primarily</u> use or understand the term sought to be registered to refer to the genus of goods or services in question***." *H. Marvin Ginn Corp. v. Int'l Ass'n of Fire Chiefs, Inc*., 782 F.2d 987, 989-90 (Fed.

Cir. 1986) (emphasis added); *Interprofession du Gruyere v. U. S. Dairy Exp. Council,* 61 F.4th 407, 416 (4th Cir. 2023).

**2.     MOKE Is Not Generic Because There Is No Evidence That The Purchasing Public Primarily Understands MOKE To Refer To A Class Of Automotive Products**

Moke America agrees with the MIL Parties that MOKE is not generic. As noted above, a mark is generic if the relevant public primarily uses or understands the term to refer to the type or class of goods in question.  *See United States Pat. & Trademark Off. v. Booking.com B. V.*, 140 S. Ct. 2298, 2301 (2020); *Interprofession*, 61 F.4th at 416.  "A mark is not generic merely because it has some significance to the public as an indication of the nature or class of an article…. In order to become generic the principal significance of the word must be its indication of the nature or class of an article, rather than an indication of its origin." *Feathercombs, Inc. v. Solo Prod. Corp*., 306 F.2d 251, 256 (2d Cir. 1962).

"Evidence of what the relevant public understands the term to mean may come from direct consumer testimony, surveys, dictionary listings, newspapers, and other publications." *Interprofession*, 61 F.4th at 416 (quoting *Loglan Inst., Inc. v. Logical Language Grp., Inc*., 962 F.2d 1038, 1041 (Fed. Cir. 1992)).  No party in this case has ever contended that MOKE is generic, and there was no evidence at trial that MOKE has become the term for a style of automotive products in the minds of the purchasing public. There is no direct consumer testimony or consumer survey

evidence in the record, and there is no evidence of newspapers or other publications using the term "moke" as a generic reference to a style of vehicle, such as the terms convertible and SUV might be used.

Furthermore, the parties brought to the District Court's attention that according to the Merriam-Webster dictionary, "moke" is British slang for donkey, and Australian slang for horse – not a generic term for a style of vehicle. (JA1127) Still further, the District Court explicitly found that "[i]n American English, 'moke' lacks any defined meaning." (JA1127) Signally, it is only the meaning in American English that matters when determining if a term is generic in the U.S. *See Golden Eye Media USA v. Trolley Bags UK Ltd.*, 525 F. Supp. 3d 1145, 1223 (S.D. Cal. 2021) (Although "trolley" is a generic term in England for what Americans call a shopping cart, the trademark TROLLEY BAG for a bag inserted into a shopping cart was held to be a suggestive mark in the U.S.). Thus, there is no evidence of any dictionary defining "moke" as a style of vehicle or some other type of automotive product, or indeed that the word "moke" has any meaning at all in the United States, other than being a coined brand name like EXXON or KODAK.

In short, the trial record lacks sufficient evidence to support the District Court's finding that the primary meaning of the term MOKE in the minds of prospective purchasers of automotive products in the United States is the generic term for a style of vehicle. Although members of the public may walk into a Ford

dealership and ask whether they have any SUVs, or minivans, or convertibles to test drive, there is no evidence suggesting that the public would walk in and ask whether they have any "mokes."  Consequently, the District Court's finding that MOKE is generic is clearly erroneous and should be reversed.

Notably, in their opening brief, the MIL Parties argue that reversing the District Court's finding of genericness requires reversal of the dismissal of their counterclaims.  The MIL Parties completely ignore the fact that the District Court's erroneous finding of genericness was equally the basis for dismissing *Moke America's claims* on the MIL Parties' Rule 52(c) motion.  Consequently, if this Court overturns the District Court's finding of genericness, as both sides contend it should, then Moke America respectfully requests this Court to: (1) overturn the grant of the MIL Parties' Rule 52(c) motion and the dismissal of Moke America's claims for trademark infringement and a declaratory judgment of trademark ownership, and (2) remand the case to allow Moke America's claims against the MIL Parties to proceed.

### 3.    MOKE Is Not Descriptive Because The Word MOKE Does Not Directly Describe Any Aspect Of Automotive Products

MOKE is also not a descriptive trademark.  Unlike descriptive marks such as KING SIZE for clothes and BLISS for spa services (*see* 2 McCarthy § 11:16 notes 2-14 and cases cited therein), the term "moke" does not directly and immediately describe any quality, feature, or other aspect of automotive products. Indeed, as the

District Court found, the word has no meaning in American English, and even outside the United States, it is only a slang term for donkey or horse. (JA1127) Thus, it does not directly describe an aspect of automotive products – a requirement for it to be a descriptive trademark for automotive products.

Of course, if someone is familiar with APPLE brand computers or KODAK brand cameras, those trademarks might provide an expectation of what the corresponding product will look like, or how it will operate. That, however, does not turn those trademarks into descriptive trademarks. They are merely fulfilling their function as a trademark, allowing you to draw on your prior experience with KODAK-branded cameras and APPLE-branded computers. The words kodak and apple, divorced from their trademark function, convey no information about cameras or computers, respectively. The same is true for MOKE and automotive products. While someone familiar with MOKE-brand automotive products might have an expectation for what the product looks like due to previous experience with MOKE-brand automotive products, divorced from that trademark function, the word "moke" conveys no information directly describing an automotive product. Thus, MOKE is not a descriptive trademark.

### 4. MOKE Is Arbitrary, Fanciful, Or Suggestive -- Categories That Do Not Require Any Evidence Of Secondary Meaning When Proving Ownership

Thus, MOKE falls within one of the three remaining trademark classifications – either arbitrary (no meaning in the context of automotive products), or fanciful (a made up word in the United States), or suggestive (suggests, but does not direct describe, a quality or aspect of automotive products). Which of the three does not matter to this case. All three categories are "inherently distinctive" under trademark law. Thus, regardless of which of the three MOKE is, no evidence of secondary meaning (that consumers have come to associate the trademark with a single source for the goods) is needed to prove ownership of the trademark. *E.g.*, *Fuddruckers, Inc. v. Doc's B.R. Others, Inc.*, 826 F.2d 837, 843 (9th Cir. 1987) ("If a designation such as trade dress is inherently distinctive, 'the further requirement of a showing of secondary meaning would be superfluous' to the issue of validity.") Rather, as is explained directly below, the only required elements of proving ownership of an inherently distinctive mark is priority of use of the mark in commerce. *See* 2 McCarthy on Trademarks and Unfair Competition § 11:4 (5th ed.) ("Inherently distinctive designations are given legal protection immediately upon first use as a mark.")

Consequently, Moke America respectfully requests that this Court not just overturn the District Court's finding that MOKE is generic, but further find MOKE to be an inherently distinctive trademark.

## II.  The District Court's Finding That Mini Mania Did Not Acquire Rights in MOKE Should Be Reversed

### A.  Prior To The MIL Parties' Alleged 2015 Priority Date, And At A Time When The MIL Parties Admit That No One Else Owned U.S. Trademark Rights In MOKE, Mini Mania Used The MOKE Trademark In Commerce

It is easy to acquire federal common law rights in an inherently distinctive trademark. As long as a trademark is not generic or descriptive, ownership of the trademark is acquired simply by being the first to use it in commerce. *Hana Financial, Inc. v. Hana Bank*, 135 S. Ct. 907, 909, 190 L. Ed. 2d 800 (2015) ("Rights in a trademark are determined by the date of the mark's first use in commerce. The party who first uses a mark in commerce is said to have priority over other users."); *Emergency One, Inc. v. American Fire Eagle Engine Co., Inc*., 332 F.3d 264, 268 (4th Cir. 2003) ("The first user, then, to appropriate and use a particular mark—the "senior" user—generally has priority to use the mark to the exclusion of any subsequent—or junior—users."); *One Industries, LLC v. Jim O'Neal Distributing, Inc*., 578 F.3d 1154, 1158, (9th Cir. 2009) ("It is a cardinal principle of federal trademark law that the party who uses the mark first gets priority."), *cert. denied*, 130 S. Ct. 1739 (2010); 2 McCarthy on Trademarks and Unfair Competition § 16:4

(5th ed.) ("The cases are legion to the effect that for inherently distinctive marks, ownership is governed by priority of use. For such marks, the first to use a designation as a mark in the sale of goods or services is the 'owner' and the 'senior user.'")

It is undisputed that the earliest priority date for the MIL Parties is in 2015. It is also undisputed that in 2008, seven years earlier, Mini Mania launched its minimokeusa.com website and began marketing and selling in the United States MOKE-branded vehicle kits. Those kits included an entire vehicle body bearing a MOKE logo prominently on its front, as well as mud flaps and vehicle mats that were also branded with the MOKE trademark. Not only did the kit's vehicle body, mud flaps, and mats bear the MOKE trademark, but the webpages that marketed and offered the kits for sale in the United States featured a large MOKE logo at the top. Mini Mania's MOKE vehicle kit was advertised as "from" Mini Mania, and Mini Mania stood behind the product with its own warranty. (JA0524-0525, JA0540-0542, JA0550, JA0552-0554, JA0556-0557, JA0532-0533, JA0560-0561, JA0704, JA0624, JA0625-0626, JA0627-0628)

Selling automotive products actually branded with a MOKE logo, and offering them for sale on webpages directly beneath a large MOKE logo at the top, is twofold unambiguous use of the MOKE trademark in commerce by Mini Mania. "When a designation is prominently displayed in a way easily recognized by web users as an

indicator of origin, this is strong evidence of use as a trademark. For example, proper usage is likely when there is a picture or description of the goods on the webpage and the trademark is prominently displayed in proximity to the picture or description." 1 McCarthy on Trademarks and Unfair Competition § 3:7 (5th ed.) (citing *In re Valenite Inc.*, 84 U.S.P.Q.2d 1346, 2007 WL 2253482 (T.T.A.B. 2007) (The mark VALPRO for specialized industrial tools was prominently displayed and used on a web page in a way that buyers would recognize it as a trademark.))

More particularly, the evidence at trial revealed that Mini Mania used the MOKE trademark in commerce in the United States in connection with three categories of goods in the years before the MIL Parties' alleged priority date. In the first category, Mini Mania marketed and sold some automotive parts obtained from a variety of suppliers that did not display a MOKE trademark on them. (*E.g.*, JA0697, JA0615) It is only this category of goods for which the MIL Parties' argument that the use of the term MOKE was only intended to describe the vehicles for which Mini Mania's parts were compatible makes any sense.

But as a second category of goods, Mini Mania also marketed and sold individual automotive parts such as mud flaps, vehicle mats, name plates, and vehicle bodies that ***were branded*** with the MOKE trademark – that is, they actually displayed the MOKE trademark on the product. (*E.g.*, JA0611, JA0618, JA0623, JA0631-0632, JA0556)

And third, as detailed above, Mini Mania marketed and sold vehicle kits that included all the exterior components of a vehicle, including (among other components like the windshield, seats, and bumpers) the vehicle body branded with the MOKE logo on its front as well as MOKE-branded mud flaps and vehicle mats. (JA0539-0542, JA0532-0533, JA0554, JA0556-0557, JA0532-0533, JA0704, JA0618, JA0625-0626, JA0627-0628, JA0704)

The MIL Parties acknowledge that no one else owned the U.S. trademark rights in MOKE in the United States at the time Mini Mania began selling its MOKE vehicle kits in 2008. *See* MIL Parties Opening Br. (Doc. 33) at 6, 36, 38-39. The European and Australian companies that had previously used the MOKE trademark outside the United States had abandoned the business in the early 1990s. *Id.* Indeed, Mr. Racine, who owned and ran Mini Mania at the time, had realized that the MOKE trademark was available in the United States, and started selling the MOKE-branded vehicle kits with the deliberate intent that Mini Mania should become the "MOKE people" in the United States. (JA0531, JA0548-0549, JA1123 ¶ 3) Mr. Racine found a supplier for the vehicle kits from outside the U.S., and marketed Mini Mania on its minimokeusa.com website as the official source for them in the United States, using a prominently-displayed MOKE trademark at the top of each webpage.

The District Court found Mr. Racine to be a credible witness, and the MIL Parties acknowledged that he was a credible witness. (JA0573-0574)

Given that in 2008 no one else owned U.S. trademark rights in MOKE, anyone could have acquired ownership of the mark by starting to use it in commerce. *See George & Co. LLC v. Imagination Entm't Ltd.*, 575 F.3d 383, 400–01 (4th Cir. 2009) ("[o]nce abandoned, a mark returns to the public domain and may, in principle, be appropriated for use by others in the marketplace, in accordance with the basic rules of trademark priority …") (citations omitted); *Major League Baseball Properties, Inc. v. Sed Non Olet Denarius, Ltd.*, 817 F. Supp. 1103 (S.D.N.Y. 1993) (defendants were entitled to registration of BROOKLYN DODGER after plaintiff's abandonment of its BROOKLYN DODGERS mark), *vacated pursuant to settlement*, 859 F. Supp. 80 (S.D.N.Y. 1994). Indeed, the MIL Parties make this very argument. *See* MIL Parties' Opening Br. (Doc. 33) at Section II.C. But it was Mini Mania, not the MIL Parties, that started using the MOKE mark in commerce for MOKE-branded automotive products in 2008, which is seven years before the MIL Parties first tried to. And consistent with being the owner of the brand in the United States, Mini Mania both held itself out to the public as being the official source of the products, and stood behind its MOKE-branded goods with a warranty provided by Mini Mania. (JA0525, JA0544, JA0550, JA0552, JA0553, JA0624, JA0627-0628)

The MIL Parties have attempted to raise a cloud of dust around the only facts that matter in determining whether Mini Mania's used MOKE in commerce by

making assertions that are irrelevant or inaccurate. For example, they point out that Mini Mania did not apply to register the MOKE trademark. However both sides here are asserting common law trademark rights under 15 U.S.C. § 1125(a), also known as § 43(a) of the Lanham Act. By definition, a common law trademark is unregistered. There is no obligation to apply to register a trademark before asserting it under 15 U.S.C. § 1125(a), and failure to apply to register a trademark has no bearing on whether a party owns the trademark. Ownership comes simply from priority of use in the marketplace. *Allard Enterprises, Inc. v. Advanced Programming Resources, Inc.*, 146 F.3d 350, 357 (6th Cir. 1998) ("One of the bedrock principles of trademark law is that trademark or 'service mark ownership is not acquired by federal or state registration. Rather, ownership rights flow only from prior appropriation and actual use in the market.'"); 2 McCarthy on Trademarks and Unfair Competition § 16:4 (5th ed.) ("The cases are legion to the effect that for inherently distinctive marks, ownership is governed by priority of use.).

Similarly, the MIL Parties suggest that Mini Mania did not use the MOKE trademark in commerce because it did object to a third-party foreign company named Casti S.P.A. Corporation registering the MOKE mark in 2007. There are numerous problems with this argument. First, Mr. Racine, Mini Mania's owner and CEO at the time, directly testified that he was unaware of any third party registering the MOKE mark. (JA0561) Plainly, Mini Mania could not object about something it

did not know about.  Second, the alleged "evidence" that the MIL Parties cite to about Casti's registration is merely attorney argument, not evidence in the District Court record. Finally, if the Court decides to allow the MIL Parties to add the PTO's records pertaining to the Casti registration to the record here, the Court would see that Casti filed its application to register the mark under § 44(e) of the Lanham Act, which allows a foreign entity to rely upon a foreign trademark registration to obtain a U.S. registration. The foreign entity is supposed to have a bona fide intent to use the mark in the United States. *See* 15 U.S.C. § 1126(e). However, and significantly, a § 44(e) application does ***not*** require any evidence of use of the mark in the United States upon registration, *id*., and there is not a single piece of evidence in the record showing that Casti actually used the MOKE mark in the United States. Moreover, as admitted by the MIL Parties in the brief they cite to discussing Casti's registration, the registration was cancelled because of Casti's failure to file a Declaration of Use.  (JA0888)

The MIL Parties' argument regarding an alleged lack of quality control are also misplaced. First, the MIL Parties cite to no authority claiming that proof of quality control is a required element of proving ownership of a valid trademark.  It is not.  As explained above, only priority of use matters.  Second, Mr. Racine testified that he did conduct quality control and stood behind the quality of the products it sold with a Mini Mania warranty, just not that he inspected "a hundred percent" of the goods received from his suppliers. (JA0523-0525)

Another argument made by the MIL Parties is that "[w]hen Mini Mania identified a Moke floor mat" or placed the term "Moke" at the top of a webpage, it used the term to describe the fact that products it sold 'fit' or are compatible with historical MOKE-branded vehicles." *See* MIL Parties' Opening Br. at 47. That argument only makes sense in connection with the first category of products sold by Mini Mania described above – unbranded automotive parts. Selling vehicle kits, bodies, mud flaps, and mats that actually had the MOKE logo displayed on it is explicit use of the MOKE trademark in commerce, and plainly not a mere reference to compatibility with historical MOKE vehicles. Those products were actually branded with the MOKE trademark. Furthermore, there is no evidence that the MOKE vehicle kits or MOKE vehicle bodies sold by Mini Mania were even compatible with "historical" MOKE vehicles. Instead, Mr. Racine testified that they were intended to be used with an engine and subframe from a Mini-brand vehicle. (JA0532)

Similarly, the District Court's criticism that "neither Plaintiff nor Defendants put forth <u>any</u> evidence that consumers associate MOKE with their particular products" (JA1133) would only be relevant here if MOKE were a descriptive trademark. Only descriptive trademarks require proof of secondary meaning (that is, such consumer association) as part of proving trademark ownership. "Inherently distinctive designations are given legal protection immediately upon first use as a mark. In a sense, they are irrefutably presumed to have achieved customer

recognition as a symbol of origin immediately upon first use as a mark." 2 McCarthy on Trademarks and Unfair Competition § 11:4 (5th ed.) ("***An Inherently Distinctive Designation is Deemed to Immediately Perform as a Trademark.*** Marks that are in the 'inherently distinctive' category are regarded as capable of serving immediately upon use as a legally recognized symbol of origin—that is, as a 'trademark.'…. An inherently distinctive designation is presumed to immediately serve as an identifier of source from the very first moment that it is used as a mark.")

As explained above, MOKE is not a descriptive mark, but is inherently distinctive (either fanciful, arbitrary, or suggestive – it makes no difference which). Thus, the District Court erred in finding significance in Moke America not offering any evidence of consumer association of the trademark with Mini Mania. Mini Mania's first use of the MOKE trademark in commerce gave Mini Mania immediate ownership of the mark. Secondary meaning evidence in connection with an inherently distinctive mark is unnecessary and "superfluous." *See*, *e.g.*, *Fuddruckers,* 826 F.2d at 843; 2 McCarthy § 11:4.

In sum, by marketing and selling MOKE trademark-bearing automotive products in the United States before the MIL Parties, at a time when no one else was doing so and, as the MIL Parties admit, at a time when no one else owned the MOKE trademark in the United States, Mini Mania became the owner of federal common law trademark rights in MOKE. *See Emergency One*, 332 F.3d at 268; 2 McCarthy's § 16:4.

Thus, Moke America respectfully requests that the Court: (1) overturn the District Court's finding that Mini Mania's use of MOKE was use of a generic term rather than trademark use and consequently did not acquire trademark rights in MOKE; and instead (2) find that Mini Mania became the owner of the federal common law trademark MOKE in 2008 by using the mark in commerce.

### B.    Mini Mania Did Not "Act Only As A 'Middleman'"

The MIL Parties misstate the basis of the District Court's finding that Mini Mania did not acquire rights in MOKE.  Contrary to their assertion (MIL Parties' Opening Br. at 12), the District Court did not find that Mini Mania "acted only as a 'middleman'" and did not "rule[] that Mini Mania was 'just a funnel' through which parts produced abroad for MOKE brand vehicles were made available to U.S. consumers, and any 'goodwill' from sales of MOKE branded products was 'not associated with' Mini Mania." The District Court made no such findings or rulings. Rather, as can be seen from the trial transcript to which the MIL Parties cite, the District Court there was merely asking the MIL Parties' counsel whether the Court correctly understood their argument:

> ***It seems to me what you're saying is*** …. It's coming from abroad, and he's just a funnel to get it to them. So the goodwill is not associated with him… ***Is that what your argument is?***

JA0595 (emphasis added)

Likewise, the District Court's May 3, 2023 Memorandum Opinion on appeal here does not contain any findings that Mini Mania was a mere "middleman" or "funnel."  Instead, the District Court's Memorandum Opinion is clear that the bases of its finding that Mini Mania did not acquire ownership of the MOKE trademark, as well as its ultimate finding that none of the parties did so, were its findings that: (1) the parties bore the burden of proving MOKE was not generic as part of proving MOKE was a valid trademark, an element of all their claims and counterclaims, (2) the parties failed to disprove genericness; and (3) Mini Mania's use of MOKE was use of a generic term.  (JA1120) ("The parties' Rule 52 briefs … now stand ripe for decision.  And the MOKE mark's distinctiveness, or lack thereof, now stands as the central and dispositive issue in the case.") (footnote omitted); (JA1131) ("…Mini Mania did not use [MOKE] as a trademark, but instead as a generic term, synonymous with a style of vehicle produced by different companies in a prior era.")

In addition, contrary to the MIL Parties' argument, the evidence shows that in marketing and selling its MOKE vehicle kits and MOKE-branded parts as of 2008, Mini Mania was not using "the MOKE mark on advertising materials … only to identify the goods of *another* party rather than identifying its own goods."  MIL Parties' Opening Br. at 47 (emphasis in original).  Rather, Mini Mania deliberately sought to become the source of MOKE automotive products for U.S. consumers.

(JA0540)  It selected goods to carry under the MOKE brand, and it marketed its MOKE vehicle kits as "from Mini Mania."  (JA0523-0525)  It backed its MOKE products with a warranty from Mini Mania. (JA0525)  If its customer had an issue with a MOKE product, the buck stopped with Mini Mania; the customer was not told to take it up with Mini Mania's supplier. (JA0524, JA0561)  And in addition to its original minimania.com website, Mini Mania launched another website focusing on its MOKE goods, minimokeusa.com, that displayed its MOKE logo at the top of every page.  (JA0540, JA0611-0635)

That Mini Mania acquired its products from an overseas supplier changes nothing.  "It is well settled that one need not himself manufacture goods in order to acquire a valid mark." *Southeastern Brewing Co v. Blackwell*, 80 F.2d 607, 610 (4th Cir. 1935). In *Menendez v. Holt*, 128 U.S. 514, 520, 9 S. Ct. 143, 144 (1888), the Supreme Court found that the distributor of flour, not the manufacturer of the flour, was entitled to trademark protection by virtue of using its "skill, knowledge, and judgment" in selecting the products to sell under the mark.  Here, Mr. Racine similarly applied his skill, knowledge, and judgment in selecting MOKE-branded products to sell in the United States. (JA0524-0525).  *See also Victor Tool & Machine Corp. v. Sun Control Awnings, Inc.*, 299 F. Supp. 868, 874 (E.D. Mich. 1968), aff'd, 411 F.2d 792 (6th Cir. 1969) ("It is enough that they are manufactured for him, that he controls their production, ***or that they pass through his hands in***

43

*the course of trade and that he gives to them the benefit of his reputation or of his name and business style.*") (emphasis added)

The cases cited by the MIL Parties concerning a U.S. distributor's lack of trademark rights are distinguishable. *Product Source v. Nahshin*, 112 F. Supp. 3d 383 (E.D. Va. 2015), concerned a dispute over a trademark between a foreign manufacturer and a U.S. distributor, both of which claimed rights in the mark. *Id.* at 394-95. It was found that the manufacturer already owned the U.S. trademark rights through its sales to another distributor in the U.S. with which the manufacturer had a distribution agreement and which was the supplier to the defendant distributor, as well as direct sales from the manufacturer to U.S. customers. *Id.* Here, no foreign manufacturer or supplier has claimed to be the owner of the U.S. trademark rights generated by Mini Mania's use in commerce, and there is no evidence of any use in commerce of MOKE in the U.S. prior to 2015 other than Mini Mania's.

The MIL Parties' citation to *MicroStrategy Inc. v. Motorola, Inc.*, 245 F.3d 335 (4th Cir. 2001) is even further off point. The plaintiff there asserted trademark rights in the phrase "Intelligence Everywhere." However, the Court found that the plaintiff had not used any type of consistent pattern or design to indicate that "Intelligence Everywhere" was being used as a trademark. *Id.* at 338. The Court found that the plaintiff did not consistently place the mark "on a particular part of the page, or in a particular type, [] or consistently used a distinctive font, color,

typeset or any other method that makes its nature and function readily apparent and recognizable without extended analysis." *Id*. at 342. Instead, the evidence indicated that "Intelligence Everywhere" was instead the "mission" or "motto" of the company. Those issues are not present in connection with Mini Mania's clear use of the MOKE trademark as a logo on their website and on the MOKE-branded products that they sold.

Relatedly, the question raised by the MIL Parties of who had control of the manufacturing of Mini Mania's MOKE-branded products only matters "where [a trademark's] ownership is disputed between manufacturer and merchant." 2 McCarthy on Trademarks and Unfair Competition § 16:46 (5th ed.) Here, there is no evidence that any supplier to Mini Mania has ever claimed that it, not Mini Mania, owns the MOKE trademark in the United States. To the contrary, Mr. Racine testified at trial that he had needed to take a license to use the mark MINI because that mark was owned by another party; in contrast, no one asserted to Mini Mania that Mini Mania did not own the MOKE trademark until this litigation. (JA0547-0548)

Likewise, the MIL Parties' argument that Mini Mania's use was "akin to nominative fair use" is incorrect. Nominative fair use is a defense to trademark infringement that applies where: (1) the defendant's use of the plaintiff's trademark was necessary to identify the plaintiff's product; (2) the defendant did not use more

of the plaintiff's trademark than was necessary; and (3) the defendant's conduct or language reflects the true relationship between the plaintiff and defendant's products. *See Century 21 Real Estate Crop. v. Lendingtree, Inc.*, 425 F.3d 211, 232 (3d Cir. 2005); *New Kids on the Block v. News Am. Pub., Inc.*, 971 F.2d 302, 308 (9th Cir. 1992); *Ford Motor Co. v. O.E. Wheel Distributors, LLC.*, 868 F. Supp. 2d. 1350, 1368 (M.D. Fla 2012). It is nominative fair use that allows a supermarket to advertise that it is selling NESTLE-brand candy bars without infringing the Nestle Group's NESTLE trademark.

Generally, nominative fair use does not permit a defendant to use the logo form or unique font of someone else's trademark; doing so would be "using more of the plaintiff's trademark than is necessary." *See Au-Tomotive Gold, Inc. v. Volkswagen of Am., Inc.*, 457 F.3d 1062, 1072-75 (9th Cir. 2006) (use of Volkswagen and Audi logos on keychains was infringing trademark use); *Daimler AG v. A-Z Wheels LLC*, 334 F. Supp. 3d 1087, 1097-98 (S.D. Cal. 2018) (Defendant's use of Mercedes-Benz logo in selling wheels to fit a Mercedes-Benz vehicle was infringing trademark use, rejecting argument that it was used only to convey that Defendants' wheels will fit on Mercedes-Benz cars).

Mini Mania's use was not nominative fair use. First, Mini Mania has never been sued for infringement in connection with using MOKE in commerce, and nominative fair use is only a defense to trademark infringement. Moke America is

46

unaware of a single case where the nominative fair use doctrine, or anything "akin" to it, has been offensively applied to ignore a senior user's use of a mark, and the MIL Parties cite to none.

In addition, Mini Mania's use not "akin" to nominative fair use because Mini Mania used far more of the MOKE trademark "than necessary" to supposedly identify another company's product. Mini Mania did not just use the word MOKE in a plain font at an ordinary font size to identify a supplier's trademark. Instead, it splashed a large MOKE logo prominently at the top of every page of its miniMOKEusa.com website. (JA0611-0635) Such use is not akin to nominative fair use.

Especially because Mini Mania selected what products to carry and sell under the MOKE trademark, because Mini Mania held itself out as the official source of those products in the United States, because Mini Mania openly marketed those products under a large MOKE logo on a MOKE-branded website, because Mini Mania stood behind its MOKE products with its own warranty and never passed a customer along to a supplier as the party responsible for the MOKE product, Mini Mania was not "merely a middleman" for someone else's brand. Mini Mania's use of MOKE in commerce gives it priority over the MIL Parties.

### C.   The MIL Parties Would Not Be Entitled To Judgment In Their Favor Even If Mini Mania Were A Mere "Middleman"

Moke America explains above why the MIL Parties are wrong that Mini Mania was a mere "middleman" reselling another manufacturer's goods and that Mini Mania's use was "akin to nominative fair use."  However, even if this Court were to accept the MIL Parties' argument, the MIL Parties would still not be entitled to judgment in their favor on any claims or counterclaims.  Reselling another manufacturer's goods, and the doctrine of nominative fair use that is invoked here by the MIL Parties, concerns a party's use of another party's trademark.

Under the MIL Parties' theory, when Mini Mania sold MOKE-branded goods and marketing them under a MOKE logo, Mini Mania was using its supplier's MOKE trademark rather than acquiring trademark rights for itself.  But even if that were so, the MOKE trademark would still not be available for ownership by the MIL Parties in 2015.  Instead, the trademark rights would be owned by Mini Mania's supplier.  Regardless of whether Mini Mania's use of MOKE in commerce gave Mini Mania ownership of MOKE, or was use of a trademark belonging to Mini Mania's supplier, the MOKE trademark was used in commerce in the United States and owned by *someone other than the MIL Parties* – either Mini Mania, or Mini Mania's supplier – before the MIL Parties' alleged priority date of 2015.

Indeed, that is what the Court in *Product Source Int'l, LLC v. Nahshin*, a case relied upon by the MIL Parties, concluded.  112 F. Supp. 3d 383, 394 (E.D. Va.

48

2015).  In *Product Source*, under the facts present there (discussed further above), the foreign manufacturer was found to be the owner of the trademark rather than the U.S. distributors.  This does not mean that the mark was available to be owned by a latecomer junior user, like the MIL Parties here.  It just means that a junior user would be liable for infringement to the manufacturer rather than to the distributor.

Likewise, the entire doctrine of nominative fair use, invoked here by the MIL Parties, concerns the use of a trademark already owned by someone else.  *E.g.*, *Century 21*, 425 F.3d at 232.  The supermarket selling NESTLE candy bars does not become the owner of the NESTLE trademark by its use of NESTLE in commerce because NESTLE is already owned by the candy bar manufacturer.

Thus, if, as the MIL Parties argue, Mini Mania did not acquire rights in the MOKE mark when using the mark in the United States because the mark belonged to Mini Mania's supplier, then it is that supplier that has priority over the MIL Parties rather than Mini Mania.  Either way, the MIL Parties, whose earliest priority date is admittedly not until 2015, cannot be the owner of the mark.

Indeed, a finding that it is the MIL Parties that own the MOKE trademark, even though their use was admittedly junior to Mini Mania's use of MOKE, would result in an impossibility under trademark law.  The MIL Parties would have the right to stop Mini Mania from continuing to do what it was doing for seven years before the MIL Parties came along – selling MOKE-branded vehicle bodies and

49

other automotive parts, marketed under a large MOKE logo. Giving a junior user priority over the senior user in this manner would turn trademark law on its head. 2 McCarthy on Trademarks and Unfair Competition § 16:1.50 (5th ed.) ("[I]n the United States, the rule of priority is that ownership and priority of a trademark go to the party who was first-to-use.")

### III.   Remand Is Necessary For Moke America To Be Able To Offer At Trial Its Evidence That It Is The Successor-in-Interest Of Mini Mania's Trademark Rights In MOKE

The District Court granted the MIL Parties' Rule 52(c) motion from the bench immediately after the first phase of the trial on Moke America's claims, which was limited only to the issue of Mini Mania's acquisition of trademark rights. Thus, Moke America has not yet had the opportunity to offer formally its evidence that it is the successor-in-interest to Mini Mania's rights in MOKE.

The MIL Parties suggest in their brief that the assignment between Mini Mania and Moke America is invalid. MIL Parties Opening Br. at 7 n.2. However, the MIL Parties do not explain that the District Court denied their motion for summary judgment that contained the same arguments, and that at the start of the trial, the District Court told the parties, "I kind of think the assignment is going to hold, to be candid with you, having looked at this." (JA0500)

Thus, in addition to relief requested above, Moke America respectfully requests this Court to remand this case to the District Court so that trial on Moke America's claims can continue.

## IV. The Motion In Limine Preventing The MIL Parties From Offering Evidence Regarding Foreign Trademark Rights Was Properly Granted

As the Magistrate Judge's August 8, 2021 Order explains, the MIL Parties refused to provide discovery regarding foreign trademark rights despite referring to them in their pleadings. Moke America moved to compel. During the resulting discovery hearing, the Court "directed Defendants to elect whether they would rely on evidence relating to any non-US trademark in litigating the remainder of the case." (JA0244) ***To avoid having to produce related discovery, the MIL Parties elected not to rely on such non-US trademark evidence.*** (JA0244) Thus, Moke America received no discovery from the MIL Parties' regarding their unsupported allegations relating to alleged foreign trademark rights.

Prior to the trial in this case, Moke America moved in limine to ensure that, in light of the choice made and bargain struck by the MIL Parties at the discovery hearing not to "rely on evidence relating to any non-US trademark in litigating the remainder of the case," the MIL Parties would not unfairly surprise it at trial with such evidence. The District Court granted the motion, holding the MIL Parties to their election not to rely on such evidence in return for avoiding related discovery obligations. (JA0403).

51

Consequently, Moke America respectfully requests this Court to ignore the MIL Parties' improper reference to alleged ownership of foreign trademark rights (MIL Parties Opening Br. at 10), and deny the MIL Parties' baseless request that this Court reverse the District Court's grant of Moke America's motion in limine in connection with such evidence.

Furthermore, a core principle of trademark law is the doctrine of territoriality. This doctrine holds that trademark rights do not carry over from one country to another. Instead, trademarks have an independent legal existence in every country, and must be separately established in each country in which the mark is used. *E.g., Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 219 (4th Cir. 2002) ("This case involves a dispute … between two companies named 'Harrods,' both with legitimate rights to the 'Harrods' name in different parts of the world."); *Topps Co., Inc. v. Cadbury Stani S.A.I.C.*, 526 F.3d 63, 70 (2d Cir. 2008) ("The principle of territoriality is fundamental to trademark law. A trademark has a separate legal existence under each country's laws and trademark rights exist in each country solely according to that nation's laws."); *Sterling Drug, Inc. v. Bayer AG*, 14 F.3d 733, 737-38 (2d Cir. 1994) (at the time of the litigation, the plaintiff owned the BAYER mark in the U.S. and the defendant owned it in most other countries); 5 McCarthy on Trademarks and Unfair Competition § 29:3 (5th ed.) ("Prior use of a trademark in a foreign country does not entitle its owner to claim exclusive trademark rights in

the United States as against one who used a similar trademark in the U.S. prior to entry of the foreigner into the domestic American market.")

It is the MIL Parties' own position that there was no owner of the U.S. trademark rights in MOKE since at least 1993, and there is no evidence of any foreign entity owning MOKE trademark rights outside the United States that intended to enter into the U.S. market since that time. Mini Mania's commencement of use in the United States in 2008 therefore gave it ownership of MOKE and priority over the MIL Parties; any alleged foreign trademark rights that the MIL Parties now allege to have are irrelevant.

## CONCLUSION

For the foregoing reasons, Moke America respectfully requests that this Court: (1) reverse the District Court's judgment against Moke America on its claims for a declaratory judgment of trademark ownership (Count II) and for federal common law trademark infringement (combined Counts III, IV, and V); (2) find that MOKE is not generic but is inherently distinctive; (3) find that Mini Mania became the owner of the common law MOKE trademark in 2008 by using the MOKE trademark in commerce; (4) reject Defendant-Appellants/Cross-Appellee's request to rule in their favor on their counterclaims and on Moke America's Count I; and (5) remand this case to the District Court to continue the trial on Moke America's claims.

**STATEMENT REGARDING ORAL ARGUMENT**

Moke America respectfully requests oral argument.


Dated: October 23, 2023                    Respectfully submitted,

                                           _/s/ David Brafman_____
                                           David Brafman
                                           Mark Passler
                                           J. Andre Cortes
                                           Akerman, LLP
                                           777 South Flagler Dr.
                                           Suite 1100 W. Tower
                                           West Palm Beach, FL 33401
                                           david.brafman@akerman.com
                                           mark.passler@akerman.com
                                           andre.cortes@akerman.com
                                           (561) 653-5000

                                           *Counsel for Plaintiff-Appellee/*
                                           *Cross-Appellant Moke America, LLC*

## CERTIFICATE OF COMPLIANCE

I certify that this brief complies with the requirements of Federal Rule of Appellate Procedure 32(a)(5) and (a)(6) because it has been prepared in Microsoft Word in 14-point Times New Roman, a proportionally-spaced font, and that it complies with the applicable type-volume limitation because it contains 12,493 words, excluding the parts exempted by Rule 32(f), according to the count of Microsoft Word.

Dated: October 23, 2023          __*/s/ David Brafman*_____
                                 David Brafman

                                 *Counsel for Plaintiff-Appellee/*
                                 *Cross-Appellant Moke America, LLC*